**Reno Sorrell HOLLOMAN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 09–95–122CR.**

Court of Appeals of Texas, Beaumont.

Submitted Dec. 19, 1996.

Decided April 2, 1997.

Tom Brown, Livingston, for appellant.

John S. Holleman, District Attorney, Livingston, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

■ This is an appeal from a conviction for the felony offense of Burglary of a Habitation. Following the jury's guilty verdict, the trial court assessed punishment at confinement in the Texas Department of Criminal Justice—Institutional Division for a term of forty (40) years. Appellant raises two points of error on appeal, the first complaining that the trial court abused its discretion in permitting a State's witness to testify in violation of the witness sequestration rule.

The record before us reflects that during the defense's case-in-chief, the following colloquy took place between the parties and the trial court:

BY THE COURT:

Okay. It is now nine o'clock. Ready to start? Nothing to take up before I bring the Jury in?

BY [TRIAL COUNSEL]:

Yes, Your Honor. I don't know if I made it a record yesterday when he offered the testimony of someone in violation of the Rule, but I would like to make it part of the record that I object.

BY THE COURT:

[State's Attorney], you ask [sic] me yesterday after we retired the Jury, told me that you would probably call Mr. Gary Wright, the husband of the alleged victim in this case, and that he had come in, I think he was sworn in, but he had come in and listened to his wife's testimony and some more testimony.

BY [STATE'S ATTORNEY]:

Specifically, he was sworn in and I was thinking about using him as a witness on another matter other than what he would be testifying to today. I did not know he had any knowledge concerning that. He ask [sic] me if he could come in and hear the cross examination of his wife, and I told him that would be fine, since I didn't intend to use him as a witness. He heard [Trial Counsel's] cross examination of his wife, he heard the testimony of Joe Rhodes and he heard the testimony of Joe Clifton. He would not be testifying to any matters concerning that.

He was also in the courtroom when [Trial Counsel] made his opening statement as to what he intended to show the Jury, and after hearing that opening statement, he came up to me and told me he had some knowledge concerning the information that [Trial Counsel] was offering to the Jury, and at that point I told him not to come back into the courtroom. So, he has heard none of the testimony of the Defense witnesses.

BY THE COURT:

[Trial Counsel], you object to that?

BY [TRIAL COUNSEL]:

Yes, sir, I do. He may not have heard any of the testimony, but what I understand he is going to report is something he has known for quite sometime. I don't know why it took a refreshing course in my speech to the Jury to refresh his memory, for him to come forward with it. It would appear that it could very easily be he did not think the case was going well in his wife's favor, and the State's favor, and that he wanted to bring in something else.

BY THE COURT:

All right. I am going to DENY the Motion, your Motion to—or GRANT [State Attorney's] Motion to allow him to testify, and OVERRULE your objection on that.

The record before us indicates the final witness in the State's case-in-chief was Joe Rhodes, the lead investigator with regard to the burglary. Rhodes was cross-examined extensively by appellant's trial counsel regarding how appellant became the prime suspect, including questions to Rhodes concerning the house owned by appellant's family which was located approximately one-quarter mile from the scene of the burglary. It was Rhodes's theory that appellant was staying at this otherwise abandoned house which provided him with the opportunity to commit the burglary. Rhodes also stated that neighbors of the complainant had seen appellant walking in the neighborhood "from time to time." Immediately following Rhodes's testi-

mony, the State rested and appellant's trial counsel made his opening remarks as to what he anticipated his witnesses's testimony would show, e.g., that appellant's identification by neighbors was based on mistaken identity as the house that the authorities considered him living in at the time of the offense had no electrical service, was boarded up and virtually abandoned so that no one could live there. It is apparently at this point in the trial that Gary Wright informed the prosecutor that he could testify that he personally observed appellant at the "abandoned" house about one to one and one-half months prior to the date of the offense, that he (Wright) observed appellant going inside the house, and that from all indications it appeared appellant was living there. The prosecutor instructed Wright to remain outside the courtroom for the entirety of the case-in-chief for the defense, and was then called by the State as a rebuttal witness. From all appearances, it seems the State acquiesced in a violation of the witness sequestration rule in that the State admits it permitted Wright to enter the courtroom to hear his wife's testimony as well as the testimony of the State's two remaining witnesses, Joe Clifton and Joe Rhodes.

In *Guerra v. State*, 771 S.W.2d 453, 474–76 (Tex.Crim.App.1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606 (1989), the Court devised a two-tiered analysis of the trial court's actions in situations where the witness sequestration rule [1] has been violated. The reviewing court must initially determine what kind of witness was involved. *Id.* at 476. The Court framed the analysis thusly:

> If the witness was one who had no connection with either the State's case-in-chief or the defendant's case-in-chief and who, because of a lack of personal knowledge regarding the offense, was not likely to be called as a witness, no abuse of discretion can be shown. On the other hand if the witness was one who had personal knowledge of the offense and who the party clearly anticipated calling to the stand, then the appellate court should then apply

the *Haas v. State*, 498 S.W.2d 206 (Tex.Cr. App.1973) test as amended above and in *Archer v. State*, 703 S.W.2d 664 (Tex.Cr. App.1986).

> *Id.*

In the instant case, the witness in question, Gary Wright, does not fit neatly into either description recited above. While he had no personal knowledge of the crime itself, being the husband of the complainant as well as the owner of the burglarized premises, Gary Wright could not be said to have "no connection" with the State's case-in-chief in that he could have been called to testify as to the lack of consent the intruder had for entry into the habitation. Indeed, the State admitted that Gary Wright had been sworn as a potential witness and placed under the rule at the start of the trial. However, from the State's explanation to the trial court, it is apparent that the events that Wright ultimately testified to were not facts in Wright's possession that were clearly anticipated by the State to contradict the heart of appellant's defense when the State designated him a witness at the beginning of the trial.

From the State's description of the events, Wright's witness status can be likened to that of the witness in *Green v. State*, 682 S.W.2d 271 (Tex.Crim.App.1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985), one of the key cases relied on by the *Guerra* Court, and the basis for the first tier of analysis as to the type of witness involved. In *Green*, the witness in question had merely been watching the trial as a spectator when she overheard the defendant speak and noticed he had a speech impediment. Previous testimony indicated the perpetrator of the offense had spoken with a lisp. The lone defense witness testified the defendant did not speak with a lisp. The State called the spectator to testify in rebuttal to the fact the defendant did indeed have a speech impediment. This testimony was permitted by the trial court over the defendant's objection the spectator's testimony violated the witness sequestration rule.

---

1. There are actually two sources of "the rule." Tex.Code Crim.Proc.Ann. art. 36.05 (Vernon 1981); and Tex.R.Crim.Evid. 613.

The Court of Criminal Appeals affirmed the conviction stating the spectator's testimony became necessary due to unforeseen events arising during the course of the trial. Under the circumstances presented in the instant case, we find no abuse of discretion by the trial court in permitting Gary Wright to testify to his observation of appellant apparently living at the "abandoned" house approximately one month or so before the commission of the offense. Point of error one is overruled.

■ Appellant's second point of error complains the trial court erred in sentencing appellant without causing a presentence investigation report (PSI) to be prepared. Appellant's brief refers us to "Article 42.12, Section 9(i), Tex.Code of Crim.Proc." and quotes said provision as follows:

> A presentence investigation shall be conducted on any offender convicted of a felony offense if it appears to the court through its own observation or on suggestion of a party that the defendant may have a mental impairment. The presentence investigation shall include a psychological evaluation which determines, at a minimum, the defendant's IQ and adaptive behavior score. The results of the evaluation shall be included in the report to the court as required by Subsection (a) of this section.

Appellant contends that even though he did not object at or after the sentencing hearing to the trial court's failure to have a PSI prepared, the provisions of art. 42.12, sec. 9(i) are mandatory and are not subject to procedural forfeiture as evidence came to light during the trial that appellant may be suffering from some mental impairment. The record before us reflects that the trial court, on motion from one of the parties, ordered appellant to submit to a psychological examination in order to determine his competency to stand trial and to determine whether he was sane at the time of the offense. The results of the examination were filed with the court on September 19, 1994,

by Dr. Walter Y. Quijano, Ph.D. Dr. Quijano found appellant to be competent to stand trial and that appellant was not insane at the time the offense was committed. This report was filed some seven months prior to commencement of the trial. The record contains no objection to Dr. Quijano's findings by appellant.

With regard to the allegedly fundamental statutory provision, the language from art. 42.12, sec. 9(i) quoted in appellant's brief was amended in 1991.[2] The provision in effect at the time of appellant's trial reads as follows:

> A presentence investigation conducted on any offender convicted of a felony offense who appears to the court through its own observation or on suggestion of a party to have a mental impairment shall include a psychological evaluation which determines, at a minimum, the defendant's IQ and adaptive behavior score. The results of the evaluation shall be included in the report to the court as required by Subsection (a) of this section.

■ The clear import of the amendment appears to be to remove language indicating a PSI "shall be" prepared when a felony offender appears to suffer from mental impairment. The revised language seems now to say that *if* the trial court, in its discretion, orders a PSI to be prepared, then said PSI must contain a psychological evaluation of the defendant if said defendant has exhibited mental impairment. The focus of what "mandatory" action is called for when the convicted felon has exhibited mental impairment has obviously shifted from the creation of the PSI itself to the current language requiring inclusion of the psychological evaluation *if* a PSI has been previously ordered. At any rate, we agree with the Dallas Court of Appeals that any right to have a PSI prepared prior to sentencing in a felony case is a right forfeitable by inaction. *Wright v. State*, 873 S.W.2d 77, 83 (Tex.App.—Dallas 1994, pet. ref'd).[3] Therefore, the trial court

---

2. Act of June 15, 1989, 71st Leg., R.S., ch. 785, § 4.17, 1989 Tex.Gen.Laws 3498, 3503, *amended by* Act of August 29, 1991, 72nd Leg., 2d C.S., ch. 10, § 16.01, 1991 Tex.Gen.Laws 213.

3. We are aware of the apparent conflict between Tex.Code Crim.Proc.Ann. art. 42.12, sec. 9 (Vernon 1979 & Supp.1997), and Tex.Code Crim Proc.Ann. art. 37.07, sec. 3(d) (Vernon 1981 & Supp.1997). Article 37.07, sec. 3(d) indicates the trial court has discretion in deciding whether or not to

did not err in sentencing appellant without previously having a PSI prepared. Point of error two is overruled. The judgment and the sentence of the trial court are affirmed.

AFFIRMED.

order the promulgation of a PSI when the trial court assesses punishment.