Affirmed and Opinion filed March 1, 2007








Affirmed and Opinion filed March 1, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00043-CR

____________

 

DUKE THOMAS NGUYEN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 230th
District Court

Harris County, Texas

Trial Court Cause No. 1025052

 



 

O P I N I O N








Appellant, Duke Thomas Nguyen, was charged by indictment
with the felony offense of making a false statement to obtain credit.  The
indictment included two final convictions for felony theft, included for
purposes of enhancement of appellant=s punishment. 
Appellant pleaded guilty to the charge in the indictment and true to each
enhancement allegation.  A presentence investigation report was prepared and a
punishment hearing conducted, at which the trial court found appellant guilty
of the offense alleged, found the enhancement allegations true, and sentenced
appellant to forty years= confinement in the Institutional Division
of the Texas Department of Criminal Justice.  Ten days later, appellant filed a
pro se written notice of appeal and indigency, which stated in part that
appellant had not been represented by counsel since sentencing.  Appellant was
not appointed counsel to assist in his appeal until thirty-two days after his
sentencing.  

Appellant presents two issues for review.  First, he claims
that he was denied counsel at a critical stage of the proceedings, claiming
that he did not have counsel during the period when he could have filed a
motion for new trial.  Second, he claims that the trial court erred by not sua
sponte ordering that a psychological evaluation be included in the
presentencing investigation report.  Because we find that appellant has not
overcome the presumption that he was represented by counsel and that counsel
acted effectively, and because appellant did not object in the trial court to
the lack of a psychological evaluation, we affirm. 

I.        Appellant
Fails to Rebut Presumption of Representation

A.      The Case
Law Defines Appellant=s Rights and
Creates a Rebuttable Presumption of Representation

The right to counsel is fundamental in our justice system,
and it applies at every critical stage of a proceeding.  Trevino v. State,
565 S.W.2d 938, 940 (Tex. Crim. App. 1978).  Though the Court of Criminal
Appeals has not ruled on the subject, this court has held that the time period
for filing a motion for new trial is a critical stage.  Oldham v. State,
889 S.W.2d 461, 462 (Tex. App.CHouston [14th Dist.] 1994), rev=d on other grounds, 977 S.W.2d 354
(Tex. Crim. App. 1998).  








To prevail on a claim of deprivation of counsel during the
time to file a motion for new trial, appellant must affirmatively prove that he
was not represented by counsel during this critical stage.  Hanson v. State,
11 S.W.3d 285, 288 (Tex. App.CHouston [14th Dist.] 1999, pet ref=d).  A rebuttable
presumption exists that the appellant was represented by counsel and that
counsel acted effectively. See Oldham v. State, 977 S.W.2d 354, 363
(Tex. Crim. App. 1998).  This presumption arises, in part, because appointed
counsel remains as the defendant's counsel for all purposes until expressly
permitted to withdraw, even if the appointment is for trial only.  Hanson,
11 S.W.3d at 288 (citing Ward v. State, 740 S.W.2d 794, 796 (Tex. Crim.
App.1987)).  When a motion for new trial is not filed, courts apply a 
rebuttable presumption that the attorney discussed the merits of the motion for
new trial with the appellant, and the appellant rejected it.  Oldham,
977 S.W.2d at 363.  The Court of Criminal Appeals indicated that appropriate
rebuttal evidence would show that Atrial counsel
thought that his duties were completed with the end of trial, and had
thereafter abandoned the appellant.@  Id.  Under
Oldham and its progeny, an appellant=s statement that
he has not been represented since sentencing is not enough to rebut the
presumption of effective assistance.  See id. at 363; Smith v. State,
17 S.W.3d 660, 662B63 (Tex. Crim. App. 2000).  Appellant must
also show that counsel did not confer with him regarding the merits of filing
of a motion for new trial.  See Smith, 17 S.W.3d at 663.  Appellant has
made no such showing here.

B.      The
Circumstances of this Case Do Not Overcome the Rebuttable Presumption

Appellant attempts to distinguish this case from Oldham and
Smith by pointing out that his trial counsel approved a document
reflecting that appellant had waived his right to appeal, when appellant had
not.  Appellant claims this is evidence of counsel=s confusion
regarding appellant=s post-sentencing rights, and that this,
combined with the statement in his pro se notice of appeal that he had been
without counsel since sentencing, sufficiently rebuts the presumption that he
was properly counseled concerning his post-sentencing rights.  For several
reasons this argument does not overcome the presumption.  The fact that counsel
may have been confused at some point regarding whether appellant waived his
right of appeal does not necessarily prove that counsel did not advise
appellant regarding his right to file a motion for new trial.  The two eventsCa motion for new
trial and a notice of appealCare different enough in character that
confusion concerning one does not prove neglect of the other.  In the absence
of evidence to the contrary, we presume that appellant was advised of his right
to file a motion for new trial, and decided not to file such a motion. 








Appellant also attempts to liken this case to several cases
in which courts of appeals have found the presumption of effective assistance
rebutted.  Courts of appeal have deviated from Oldham when trial counsel
actually moved to withdraw before the thirty-day window to file a motion for
new trial had expired.  Such a withdrawal, indicating that work remains to be
done for the client, is enough for these courts to rebut the presumption that
an attorney has counseled his client regarding a motion for new trial and the
client has rejected the tactic.  See Blumenstetter v. State, 117 S.W.3d
541, 546B47 (Tex. App.CTexarkana 2003, no
pet.); Massingill v. State, 8 S.W.3d 733, 736B38 (Tex. App.CAustin 1999, no
pet.).  Appellant also cites to a case in which the defendant filed a pro se
motion for new trial.  See Champion v. State, 82 S.W.3d 79, 83B84 (Tex. App.CAmarillo 2002,
pet. ref=d).  In such a
situation, clearly the client did not reject the notion of filing a motion for
new trial following a consultation with his attorney.  See id. at 83. 
Besides the fact that none of these cases are binding precedent, none of the
facts that distinguish these cases are present here.  Trial counsel did not
formally withdraw, and appellant did not file a pro se motion for new trial. 
Thus, none of the cited case law helps to distinguish this case from Oldham and
Smith.  We overrule appellant=s first issue.

II.       Psychological
Evaluation

We turn now to appellant=s complaint that
the trial court erred by not including a psychological evaluation in the PSI.  

A.      Error Was
Waived

Before we reach the merits of appellant=s complaint, we
consider the State=s claim that appellant waived any error by
not objecting below.  No published decision has considered whether a defendant
can waive his right to have a psychological evaluation included in the PSI.  As
we explain below, we conclude that this right can be waived and that appellant
waived his right.

1.       Why Error
is Waivable








First, since the Court of Criminal Appeals issued Marin
v. State, 851 S.W.2d 275 (Tex. Crim. App. 1993), in which it discussed the
three categories of rights in our court system, courts of appeal have held that
the right to a PSI generally is forfeited when a party fails to request a PSI
if none was prepared.  See Summers v. State, 942 S.W.2d 695, 696B97 (Tex. App.CHouston [14th
Dist.] 1997, no pet.);  Holloman v. State, 942 S.W.2d 773, 776 (Tex.
App.CBeaumont 1997, no
pet.);  Wright v. State, 873 S.W.2d 77, 83 (Tex. App.CDallas 1994, pet.
ref=d). 

A psychological evaluation is merely part of a PSI.  See
Tex. Code Crim. Proc. art.
42.12, ' 9(i) (when a
psychological evaluation is prepared, it should be included as part of the PSI). 
If the defendant can waive his right to object that no PSI was prepared, it
logically follows that a defendant can waive the right to complain about a part
of the PSI being left out.  The right to a part of the whole should not
be given more protection than the right to the whole. 

Second, the right to a psychological evaluation under
section 9(i) is analogous to the right to an alcohol and drug evaluation under
section 9(h); the same type of directory language is used.  At least three of
the intermediate appellate districts have held that a defendant who failed to
object at trial waived the right to complain on appeal that an alcohol and drug
evaluation was not included in the PSI.  See, e.g., Alberto v. State,
100 S.W.3d 528, 529 (Tex. App.CTexarkana 2003, no pet.); see also 
Schmidt v. State, No. 14-97-00945-CR, 1999 WL 394816, at *1 (Tex. App.CHouston [14th
Dist.] June 17, 1999, no pet.) (not designated for publication); Ladet v.
State, No. 01-96-00887, 1998 WL 23095, at *1 (Tex. App.CHouston [1st
Dist.] Jan. 8, 1998, no pet.) (not designated for publication).  In short, we
hold that the failure to object at trial results in waiver on appeal of the
trial court=s error in not ordering a psychological evaluation.  

2.       Why
Appellant Waived Error








We now consider whether appellant waived any error in the
court below.  After the judge ordered a PSI, but before it was completed,
appellant=s counsel informed the judge, by way of motions to
determine competency and sanity, that  appellant had been diagnosed as bipolar
and that he had tried to commit suicide.  The judge ordered both a competency
evaluation and a sanity evaluation.  Although both evaluations were
comprehensive, neither contained an IQ or adaptive behavior score.[1] 


Appellant failed to object at or after the sentencing
hearing to the court=s failure to order a report under section
9(i), or to the failure of the competency and sanity evaluations to contain
either an IQ score or an adaptive behavior score.  Because counsel failed to
bring the court=s attention to these alleged inadequacies
of the PSI, any error is waived. See Tex.
R. App. P. 33.1(a).    

B.      If Section
9(i) Is Not Subject to Waiver, Any Error Was Harmless

We forego the analysis of whether failing to order the
inclusion of a psychological evaluation in the PSI was error, because even if
the trial court erred, any error is harmless. Any non-constitutional error,
defect, irregularity, or variance that does not affect substantial rights must
be disregarded.  See id. 44.2(a), (b).  A substantial right is affected
when the error had a substantial and injurious effect or influence in
determining the verdict.  King v. State, 953 S.W.2d 266, 271 (Tex. Crim.
App. 1997).  If, on the record as a whole, it appears the error did not
influence the verdict, or had but a slight effect, we must consider the error
harmless and allow the conviction to stand. Johnson v. State, 967 S.W.2d
410, 417 (Tex. Crim. App. 1998).

To begin with, we must acknowledge that two psychological
evaluationsCa sanity evaluation and a competency evaluationCwere in front of
the court at sentencing.  Although they were not in the PSI itself, the court
had them before it and presumably considered them with the information
contained in the PSI.  As long as the evaluations were before the court at
sentencing, it is inconsequential whether they were part of the PSI or separate
from it.  








Second, the competency and sanity evaluations were
comprehensive.  It appears to us that the only relevant information not
specifically included, although required by article 42.12, section 9(i), is an
IQ score and an adaptive behavior score.  For purposes of a PSI, which is
prepared to assist the court in setting punishment, we presume IQ is relevant
primarily if the defendant has a below-normal IQ.[2] 
In the great majority of cases, an average or above-average IQ will not impact
the punishment assessed.  However, a below-average IQ may cause a judge to
impose a lesser punishment than she would have if the IQ was normal.  While the
psychologist who examined appellant did not administer an IQ test, his
evaluations were comprehensive enough to enable him to assess appellant=s relative
intelligence and capacity for clear thought.  He would know if appellant had a
below-normal IQ, and he did not declare or imply that appellant had a
below-normal IQ.  

The written evaluations themselves were each nearly three
single-spaced pages,  containing information regarding appellant=s general demeanor
during his interview, his education, his prior military service, his medical
status, his current legal circumstances, and information regarding his state of
mind during the interview.  The reports convey the sense that appellant
responded appropriately to his situation, cooperating and eagerly sharing his
perceptions of his case.  They also reflect that appellant studied aerospace
engineering, electrical engineering and political science at Texas A&M
University, and lacked only nine elective hours to earn his degree from
A&M.  He served in the Marine Corps during Desert Storm, and was honorably
discharged.  The reports discuss the fact that appellant takes several
antidepressants and one anti-psychotic medication, but the reports also indicate
that appellant=s thought processes were coherent and goal-oriented,
and that his intellectual abilities appeared to be intact, as he was able to
clearly articulate his perceptions and concerns. 








Though we cannot tell how long the evaluations lasted, we
know that the psychologist met in person with the appellant.  Based on the
information contained in the reports, the psychologist would have been able to
assess at a minimum if appellant had a below-average IQ.  However, nothing in
either report indicates a below-normal IQ.  In fact, as mentioned above, the
reports give several indicia that appellant was both intelligent and thinking
clearly.  It appears to us that the reports gave the court much, if not all, of
the same information the court would have received from an IQ score.  

The term Aadaptive behavior score@ is not defined in
the Code of Criminal Procedure, although the term Aadaptive behavior@ is defined in the
Health & Safety Code, under Title 7, entitled AMental Health and
Mental Retardation.@  See Tex. Health & Safety Code ' 591.003.  It
means, Athe effectiveness 
with or degree to which a person meets the standards of personal independence
and social responsibility expected of the person=s age and cultural
group.@[3]  Id. ' 591.003(1).  The
American Association on Intellectual and Developmental Disabilities (formerly
the American Association on Mental Retardation) has identified ten areas of
adaptive behavior: communication, home living, self-care, health and safety,
self-direction, community use, leisure, functional academics, work, and social
skills.  Samuel J. Meisels et al., Assessment
of Social Competence, Adaptive Behaviors, and Approaches to Learning with Young
Children, 37 (1996), http://nces.ed.gov/pubs96/9618.pdf.  The most
popular methods of evaluating adaptive behavior involve interviews or
questionnaires aimed at eliciting information about these areas of behavior.  See
id.  








The psychologist=s interview of
appellant, while not a detailed questionnaire, certainly would have given such
a trained professional ample opportunity to note any adaptive behavioral
deficiencies.  He had opportunity to judge appellant=s communication
and social skills, and the report indicates that the psychologist found
appellant to behave appropriately throughout the interview.  He also discussed
home life, health issues, academics and work experiences with appellant. 
Nowhere in either the competency report or the sanity report does the
psychologist indicate that appellant=s adaptive
behavior might be anything less than normal. Due to the information contained
in these reports, the information contained in an adaptive behavior score would
have been largely redundant and of little use to the trial court. 

In sum, the reports before the judge satisfied the minimal
requirements of a section 9(i) psychological evaluation, and, in fact, supplied
more than the minimal requirements.  As a result, we conclude that even if
error were not waived, any error was harmless.  Appellant=s second issue is
overruled. 

Conclusion

Having overruled both
of appellant=s issues, we affirm the judgment of
the trial court. 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment rendered and Opinion filed
March 1, 2007.

Panel consists of Chief Justice
Hedges and Justices Fowler and Edelman.

PublishC Tex.
R. App. P. 47.2(b).









[1]  The statute provides that, AA presentence investigation conducted on any defendant
convicted of a felony offense who appears to the judge through its own
observation or on suggestion of a party to have a mental impairment shall
include a psychological evaluation which determines, at a minimum, the
defendant=s IQ and adaptive behavior score.@  Tex. Code
Crim. Proc. art. 42.12, ' 9(i). 





[2]  We must presume this because section 9(i) does not
state why an IQ score is required. 





[3]  The Code Construction Act permits the borrowing of a
definition for an undefined term where such  A[w]ords and phrases...have acquired a technical or particular meaning,
whether by legislative definition or otherwise.@  Tex. Gov=t
Code ' 311.011.