**Opinion issued July 7, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NOS. 01-15-00781-CR &

## 01-15-00782-CR

———————————

## CHRISTOPHER NICHOLAS CAVAZOS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 184th District Court
Harris County, Texas
Trial Court Case Nos. 1402280 & 1443325

## MEMORANDUM OPINION

Appellant was charged with intoxicated manslaughter[1] and intoxicated assault[2] following a multi-car collision. He pleaded guilty without a sentencing

---

[1]    trial court cause no. 1402280; appellant court cause no. 01-15-00781-CR

recommendation. In a single issue, he complains that the trial court erred by sentencing him without requiring the Presentence Investigation Report (PSI) to include a drug-and-alcohol evaluation and psychological evaluation. We affirm.

## THE SENTENCING HEARING AND PSI

Appellant requested a PSI be prepared before sentencing. At the beginning of the sentencing hearing, the State offered the PSI into evidence, and appellant's counsel agreed, also stating that appellant had no "objections or corrections" to the PSI. Several letters in support of appellant were also admitted into evidence.

### A. Sentencing Testimony

At the hearing, two witnesses testified on behalf of the State. The first was the daughter of the woman killed in the collision with appellant. She described the impact her mother's death had on the family, including the decedent's children and grandchildren. The decedent's son also testified about the impact on the family's lives.

Appellant presented four witnesses. The first was appellant's step-father. He testified that appellant was very sweet and caring growing up, but that he struggled with depression that had gotten worse shortly before the September 22, 2013 automobile accident that led to appellant's criminal charges. He explained that appellant's long-time girlfriend recently broke up with him, and that appellant

---

[2]    trial court cause no. 1443325; appellant court cause no. 01-15-00782-CR

was seeing a counselor and taking medication. In his step-father's opinion, appellant was not trying to commit suicide when he caused the collision.

Appellant's step-father also stated that he attended counseling with appellant and appellant's mother after the accident and took classes over a two-month period about mental health issues. Appellant's step-father further testified that, before the accident, appellant was somewhat self-absorbed with self-pity, but that now his whole attitude had changed; he has been participating in bible study and talking about helping others. Appellant's family also helped financially with burial expenses for the decedent's family.

Appellant's doctor also testified. He met appellant about six months after the accident. He described appellant as depressed and full of guilt over the harm his accident caused to several families. He had several sessions with appellant, and understood him to have a history of depression and thoughts of self-harm since high school. He also evaluated appellant for an "alcoholism issue or alcohol or drug abuse," concluding that when appellant was under severe stress, he would consume too much alcohol.

Appellant's mother testified that appellant was a caring child, always looking out for other kids. He was highly intelligent, scoring at post-high school levels on standardized tests when he was in elementary school. She explained that he did not really start struggling with depression until high school. She echoed

3

appellant's step-father's and doctor's sentiment that appellant had matured greatly since the accident, focusing on counseling and grieving for the deceased and injured persons' families. She sent a card to the deceased's family expressing remorse and helped with body transportation and burial expenses.

Finally, appellant testified on his own behalf. He explained that, on the day of the accident, it was his birthday and he had borrowed his ex-girlfriend's car to go to a friend's house to celebrate with barbeque and some drinks. He left that party because he was supposed to pick up his ex-girlfriend from work at 2:00 a.m. because he still had her car. Appellant admitted that he was rushing because she was pestering him to get to her place of work. He also claimed that it was not his intention to flee the scene of the accident on foot; he was just going straight to his ex-girlfriend's place of employment, which was a block away, to pick her up and let her know about the accident. He denied that he purposely caused the accident in a suicide attempt, although he acknowledged telling a police officer that.

Appellant testified that he still suffers from depression and feels a lot of grief and remorse about what happened. He apologized to the families and prayed for forgiveness.

On cross-examination, appellant admitted to involvement in two prior crashes, in 2009 and 2010, and that he had received numerous tickets since getting his driver's license. He testified that his license was suspended at the time of the

4

crash leading to the underlying charges for intoxicated manslaughter and intoxicated assault. In 2012, he was arrested for reckless driving for speeding and running two red lights. He admitted that his bad driving in that previous case was motivated by his being upset with his girlfriend, and it resulted in a year-long pretrial intervention. During that time, he was supposed to do community service and stay off of drugs and alcohol. He successfully completed that program in August of 2013, a month before the current crash.

Appellant claimed that he was not driving recklessly the night of the current accident, despite witness claims that he was driving at least 80 m.p.h. in a 35 m.p.h. zone and that he ran through a red light and plowed into three cars, killing one person and injuring others. He admitted that he did not check on the drivers of the cars he hit after the accident, and he claimed that when he ran down the street instead (causing him to be tackled by a police officer to stop him), he simply wanted to reach his ex-girlfriend's workplace to explain why he had not picked her up. He claims to have explained that to a witness before he took off, but that the witness might not have understood English.

Appellant said that he was not thinking clearly after the accident, but that it was not because he had consumed alcohol; it was because he had been injured in the accident. He acknowledged that he did not break any bones, and that he was released from the hospital's care a few hours after the accident. He does not recall

5

telling an officer at the scene, and then later another officer in a taped interview, that he ran the red light because he was upset and wanted to kill himself. He thinks maybe the comments were taken out of context because he was having suicidal thoughts before and after the accident, but he was only rushing and ran a red light before the accident because he did not want to be late picking up his ex-girlfriend.

When asked about bonding out of jail while awaiting trial in this case, he acknowledged that a condition of his bond was that he could not use any alcohol. He stated that he did not start drinking again. When asked about failing a Breathalyzer while on bond in violation of that condition, he responded that he had one drink. He was sent back to jail and bonded out again. He had his bond revoked for failing to install and use a device in his home that administered breath alcohol level tests. He claimed he was working and going through depression still. He would sleep almost 20 hours, and he said he was having problems waking up in the morning and blowing into the machine. He did not perform any of his community service hours.

## B.    The PSI

The PSI described the accident scene and investigation with information taken from the officers and their accident reports. Two officers could smell a strong odor of alcohol on appellant's breath, and appellant had trouble walking and keeping his balance. One officers tried to perform a field sobriety test on

6

appellant, but appellant refused. The PSI stated that "[t]he defendant reported [to one officer] he knew the traffic light was red and he wanted to kill himself because he was upset about his girlfriend breaking up with him." Statements were taken from drivers and passengers of the affected vehicles and from witnesses. They consistently maintained that appellant was driving fast, ran a red light, and caused several accidents, resulting in one death and one serious injury.

Appellant's later blood draws reflected blood alcohol levels of .081 and .112. He had Naproxen (non-steroidal anti-inflammatory) and Remeron (anti-depressant) in his system. A retrograde alcohol extrapolation report was introduced, reflecting appellant's approximate BAC at the time of the accident to be 0.157.

The PSI also contains notes about interviews with appellant:

> In an interview with the defendant, he reported he will provide a statement about the offense through his attorney. A written statement was not provided. The defendant stated he is asking the Judge to place him on probation and send him to rehab (inpatient or outpatient). The defendant reported he is not the type of person to hurt anyone and still feels depressed over the offense. The defendant reported he really wants to be with his family, go to work and attend school. The defendant stated he also wants to help himself and help his family. The defendant said his mother wants to start an organization to help prevent drinking and driving and he also wants to help with this. The defendant stated he will comply with any condition of probation.

> The defendant reported he is asking the Judge to trust him on probation because he knows he will do a lot better. The defendant said he knows if he messes up, this will impact him and he does not want

to return to jail. The defendant said he also mailed a letter to the Court a couple of weeks prior to the PSI hearing about why he is asking the Judge to place him on probation. The defendant stated he also wrote a personal letter for the deceased complainant's family and believes his lawyer has a copy.

The PSI contained victim impact statements by the families of the people injured and killed in the September 22, 2013 collision. It also contained a summary of appellant's bond violations and his excuses for each.

The PSI described appellant's childhood and education. He mainly attended magnet schools with programs for the gifted and talented. He was in a homeschool program for part of high school because he was struggling with depression. Post-high school, he attended Houston Community College.

The following sections related to mental health and drug and alcohol use were included in the PSI:

**Mental Health**
Per the Harris County Special Needs Response Form, the following is noted:
**Medications:**
2/13/2015 - 5/13/2015 Citalopram Hydrobromide Tab 20 MG
2/11/2015 - 5/11/2015 Diphenhydramine HCI cap 25 MG
**Last known diagnosis:**
2/1112015 Axis1- MAJ DEP D/0, RECURR W /PSY FEAT
3/30/2014Axis1- MAJ DEP. D/0 RECURR SEV W /0 PS
**Current Mental Health Treatment**
    The defendant reported he does not meet with anyone from MHMRA in jail and only receives his medication. The defendant stated the medication is helping and he can benefit from continued mental health treatment.

## Prior Mental Health Treatment

The defendant said he first went to see a therapist when he was in high school. The defendant stated he was sleeping a lot and he did not want to get up nor did he want to go anywhere. The defendant reported he also did not want to speak to anyone. The defendant said it was initially believed he was on drugs, but a drug test proved he was not. The defendant stated he was diagnosed with depression at the age of eighteen. The defendant stated he was diagnosed with anxiety in 2012 after having a bad anxiety attack after arguing with his ex-girlfriend. The defendant reported he was not able to breathe, his arms went numb and he felt as if he was going to die. The defendant said because of these symptoms, he was taken to the doctor. The defendant stated he feels anxious after an argument or when he feels he is backed into a corner and attacked. The defendant reported his last anxiety attack occurred in August 2013 after an argument with his ex-girlfriend.

The defendant stated he has seen various therapists over the years off and on when he would be in his depression. The defendant reported when he felt normal, he would stop seeing the therapist and stop taking his medication. The defendant said he would become depressed again if something happened in his life. The defendant stated he was prescribed Wellbutrin after he bonded out for the current offenses the first time and used the medication for a while. The defendant reported when he felt better, he stopped. The defendant said prior to his most recent arrest in February 2015, he last used his medication at the beginning of 2014. The defendant stated when not taking his medication, he exercised, talked to friends and tried to go out more. The defendant reported he will not have any problems taking his medication if he is on probation.

## Prior Hospitalizations

The defendant stated his first hospitalization was at the age of twenty. The defendant said he was taken somewhere in Ben Taub Hospital after he had an outburst at home. The defendant said he began throwing things and scared his mother. The defendant stated he did not threaten his mother, but she called the police because she was worried about his safety. The defendant stated he stayed in the hospital for a couple of days.

The defendant reported his second hospitalization was around the age of twenty-one or twenty-two. The defendant stated he was taken to Harris County Psychiatric Center (HCPC) after a fight with his ex-girlfriend, Angelina Cazares. The defendant said he was depressed and told his girlfriend over the phone he wanted to kill himself. The defendant reported he cried and felt like giving up. The defendant stated his exgirlfriend became worried and called the police. The defendant said he spent a week in the hospital.

The defendant said his third hospitalization was at the age of twenty three. The defendant reported he was sent to St. Joseph's hospital overnight because he felt depressed and felt as if he did not want to live.

## Suicide Attempts/Thoughts

The defendant reported he has never attempted suicide. The defendant was specifically asked if the offense was a suicide attempt based on the police report and the defendant said it was not. The defendant reported he has had suicidal thoughts in the past. The defendant said his last suicidal thought was one to two months prior to the current offenses.

The defendant reported during this time, he was going through a lot with his ex-girlfriend after she lied to him and began dating someone else. The defendant denied having any suicidal thoughts since. The defendant said since his ex-girlfriend is no longer in his life, things are a lot better.

When asked a series of mental health related questions, the defendant reported the following: The defendant stated there has been some hitting of walls when asked about self-harming behavior. The defendant denied hurting anyone or lashing out in anger. The defendant said he had trouble sleeping prior to coming to jail and reported his appetite was off and on prior to coming to jail. The defendant stated he does find himself feeling hopeless or isolating himself from others. The defendant denied suffering from mood swings. The defendant said he does not really believe people are out to get him and he does trust people in authoritative positions. The defendant also denied having visual or auditory hallucinations. When discussing a family history of mental health and in addition to his mother having depression and his father having PTSD, the defendant

10

stated his maternal grandmother and cousin also suffer from depression.

**Alcohol/Drug Usage**

**Alcohol:** The defendant stated his first alcohol use was at the age of twenty-one with friends. The defendant said the friends he was with were good people, but he chooses not associate with them anymore. The defendant reported between twenty-one and twenty-four, he consumed alcohol once or twice a month when getting together with friends. The defendant reported during those times, he would drink six to eight drinks. The defendant said his alcohol use remained once or twice a month until the offense. With the exception of him drinking alcohol alone while on bond in 2014, the defendant said his last alcohol use was the night of the offense, of which he stated he consumed five to six beers (regular can size) and a couple of shots of vodka.

The defendant stated there were times he felt he needed a drink of alcohol when he was stressed, but he would not go out and drink.

**Drugs:** The defendant denied ever using drugs.

**Treatment:** The defendant reported he has never received substance abuse treatment. The defendant said he does not currently believe he needs help for an alcohol problem, but he is willing to get the help because he does not want it to become a problem in the future.

## C.     The Sentencing

The court addressed appellant's drinking and history of depressing during

the sentencing hearing:

Let me talk to you just a moment.  Anyone with your mental health issues cannot drink. You cannot drink. Anyone with depressive disorder.

And you may -- other mental health issues, as well, you cannot drink. Alcohol is a depressant. And you're one of those people who does stupid things when he drinks.

There is also a high correlation between being intoxicated and also feeling shamed and committing suicide. And so, you are going to

11

hurt someone again; or you're going to hurt yourself. And I think one of the things that was so upsetting to me when I read this report was that you said you would go through alcohol gotten into two [sic] when I -- if I ordered it, but you didn't really think you needed it. And if on the pretrial diversion you would have been honest about your drinking, maybe you would have had some gotten into two [sic] ordered and maybe we wouldn't be here today.

I'm just telling you when you get out, if you're paroled, you cannot drink. You cannot drink. And you have to admit you got a problem or you're going to be back in the system again and there is going to be another tragedy. So, you're a smart guy with a lot of talent. I hope you take some college courses while you're in prison. I hope this time isn't wasted for you.

In the intoxication assault case, the court found the deadly weapon paragraph true, and sentenced appellant to nine years' confinement. In the intoxication manslaughter case, the court found the deadly weapon paragraph true and sentenced appellant to sixteen years' confinement.

## ISSUE ON APPEAL

In a single issue, appellant argues:

"The trial court erred by sentencing Appellant when the Presentence Investigation Report failed to include a drug and alcohol evaluation and psychological evaluation as statutorily mandated by Tex. Code Crim. Proc. art. 42.12 §9(h) and (i)."

## APPLICABLE LAW

Article 42.12 provides, in relevant part:

Presentence Investigations

Sec. 9. (a) Except as provided by Subsection (g), before the imposition of sentence by a judge in a felony case, . . . the judge shall direct a supervision officer to report to the judge in writing on the

12

circumstances of the offense with which the defendant is charged, the amount of restitution necessary to adequately compensate a victim of the offense, the criminal and social history of the defendant, and any other information relating to the defendant or the offense requested by the judge. It is not necessary that the report contain a sentencing recommendation, but the report must contain a proposed client supervision plan describing programs and sanctions that the community supervision and corrections department would provide the defendant if the judge suspended the imposition of the sentence or granted deferred adjudication . . . .

. . . .

(h) On a determination by the judge that alcohol or drug abuse may have contributed to the commission of the offense, . . . , the judge shall direct a supervision officer approved by the community supervision and corrections department or the judge or a person, program, or other agency approved by the Texas Commission on Alcohol and Drug Abuse, to conduct an evaluation to determine the appropriateness of, and a course of conduct necessary for, alcohol or drug rehabilitation for a defendant and to report that evaluation to the judge. The evaluation shall be made:

> (1) after arrest and before conviction, if requested by the defendant;
>
> (2) after conviction and before sentencing, if the judge assesses punishment in the case;
>
> (3) after sentencing and before the entry of a final judgment, if the jury assesses punishment in the case; or
>
> (4) after community supervision is granted, if the evaluation is required as a condition of community supervision under Section 13 of this article.

(i) A presentence investigation conducted on any defendant convicted of a felony offense who appears to the judge through its own observation or on suggestion of a party to have a mental impairment shall include a psychological evaluation which determines, at a minimum, the defendant's IQ and adaptive behavior score. The results of the evaluation shall be included in the report to the judge as required by Subsection (a) of this section.

TEX. CODE CRIM. PROC. ANN. art. 42.12 §9(h)–(i) (West 2015).

## ANALYSIS

Appellant argues that the PSI report in this case did not contain the drug and alcohol evaluation or a psychological evaluation as required under article 42.12 § 9. Appellant acknowledges that his counsel did not object to the lack of either evaluation in the PSI report, and that several courts, including this one, have held that such a complaint is waived if not made in the trial court. He urges us to rely, however, on a 1991 San Antonio Court of Appeals case holding that the psychological evaluation requirement cannot be waived if the trial court has evidence of mental impairment before it. *See Garrett v. State*, 818 S.W.2d 227, 229 (Tex. App.—San Antonio 1991, no pet.). Because appellant's counsel has "found no Court of Criminal Appeals case overruling *Garrett*," appellant argues that "[t]his Court should follow the holding of *Garrett* and extend it to drug and alcohol evaluations under §9(h)."

The State's response is threefold. First, it contends appellant's sole appellate argument is waived because appellant's counsel endorsed admission of the allegedly defective PSI by affirmatively representing to the trial court that he had "no objections or corrections" when it was offered by the State. The State points out that the right to a PSI generally is forfeited when a party fails to request a PSI if one was not prepared. *See Summers v. State*, 942 S.W.2d 695, 696–97 (Tex.

14

App.—Houston [14th Dist.] 1997, no pet.); *Holloman v. State*, 942 S.W.2d 773, 776 (Tex. App.—Beaumont 1997, no pet.); *Wright v. State*, 873 S.W.2d 77, 83 (Tex. App.—Dallas 1994, pet. ref'd). In addition, the State contends that the cases uniformly holding that "a defendant who failed to object at trial waived the right to complain on appeal that an alcohol evaluation or a psychological evaluation was not included in a PSI" were all decided after *Garrett*, the case upon which appellant urges us to rely. *Nguyen v. State*, 222 S.W.3d 537, 542 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *see also Alberto v. State*, 100 S.W.3d 528, 529 (Tex. App.—Texarkana 2003, no pet.); *Schmidt v. State*, No. 14–97–00945–CR, 1999 WL 394816, at *1 (Tex. App.—Houston [14th Dist.] June 17, 1999, no pet.) (not designated for publication); *Ladet v. State*, No. 01–96–00887, 1998 WL 23095, at *1 (Tex. App.—Houston [1st Dist.] Jan. 8, 1998, no pet.) (not designated for publication).

Second, the State argues that appellant's point of error should be overruled because, to trigger the requirement that the court order a drug and alcohol treatment assessment as part of the PSI, there is a threshold requirement that the court make a judicial determination that "the offenses were caused by drug *abuse*, not mere alcohol or drug *use*." According to the State, there is no such judicial finding here.

15

Lastly, the State argues that appellant was not harmed by the lack of an alcohol evaluation or a psychological evaluation in the PSI. Specifically, the State emphasizes that "while the PSI report might not have included an alcohol evaluation or a psychological evaluation to the appellant's desires, it did include plenty of information on those issues as a resource for sentencing."

We agree with the State that appellant cannot show that he was harmed because the court had ample evidence before it about appellant's alcohol abuse and mental illness in the PSI report and through testimony at the sentencing hearing.

The PSI included appellant's full mental health history, as reported by appellant and appellant's family. The report also included information about appellant's diagnoses of depression and summaries of his hospitalizations. While the PSI did not include appellant's IQ or adaptive behavior score, the court heard testimony that appellant was in gifted programs at school, tested well academically, and attended Houston Community College. In other words, there was no indication that a low IQ was a contributing factor in the commission of appellant's offenses. The PSI listed options for psychological and psychiatric evaluation, counseling, and treatment as part of appellant's sentence. Finally, both the appellant and appellant's treating physician provided testimony at the sentencing hearing chronicling appellant's history of depression and his current treatment.

There was also information in the PSI report and in testimony at the sentencing hearing about appellant's alcohol and drug use history. The PSI listed possible options for alcohol dependency evaluation, testing, and treatment as part of appellant's sentence. Appellant denied using drugs, and stated that he drank alcohol once or twice a month. Appellant denied needing any help with substance abuse or alcohol dependency. Appellant's doctor, on the other hand, testified that appellant has a history of drinking alcohol excessively when he is stressed. The court took the combination of alcohol abuse and depressive illness into consideration in sentencing, counseling appellant that he should have been honest after his last case about his alcohol problems and admonishing him if he is paroled that he consider the impact alcohol consumption has on his life.

In sum, although the PSI report did not include drug, alcohol, and psychological evaluations in the form mandated by article 42.12, appellant's counsel stated he had no objection or corrections to the PSI, and the court had before it psychological and alcohol use information about appellant for use in formulating a sentence. Appellant cannot demonstrate harm. TEX. R. APP. P. 44.2(b).

We overrule appellant's sole point of error.

17

## CONCLUSION

We affirm the trial court's judgments.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

18